UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES ANTHONY SPECK, et al., <br><br>Plaintiffs, <br><br>v. <br><br>CBS CORPORATION, et al., <br><br>Defendants. | Case No. 20-cv-05845-JD <br><br>**ORDER RE SUMMARY JUDGMENT** |

In this wrongful death action, representatives of the estate of John Speck allege that Speck developed asbestosis while serving as a civilian electrician in the 1960s through the 1980s at the Mare Island Naval Shipyard (MINSY) in California, where he inspected and repaired electrical equipment that contained "asbestos arc chutes, ebony board, phenolic materials, paper, wire and cable." Dkt. No. 260 at 6. Speck was diagnosed with asbestosis in 2011 and died in 2021. *Id*. at 3. In a second amended complaint (SAC), plaintiffs alleged claims for product liability, fraud, negligence, and the like against multiple manufacturers. *See* Dkt. No. 260.

Several defendants have been dismissed by agreement with plaintiffs. Nine of the remaining defendants -- General Dynamics Corporation, Bath Iron Works Corporation, Eaton Corporation, Gould Electronics, Inc., PECW Holding Company f/k/a Plastics Engineering Company, Union Carbide Corporation, Ericsson Inc., RSCC Wire & Cable, and Metalclad Insulation LLC -- ask for summary judgment primarily on the ground of insufficient evidence of causation. They and other defendants also ask to exclude plaintiffs' putative asbestos and pulmonology experts, Charles Ay and Dr. Barry Horn, under Federal Rule of Evidence 702. Dkt. Nos. 338, 342, 350, 351 (Ay); Dkt. Nos. 333, 344 (Horn). Plaintiffs opposed the exclusion motions. Dkt. Nos. 366 (Ay), 368 (Horn).

1    All of the motions are suitable for decision without oral argument pursuant to Civil Local
2    Rule 7-1(b). Summary judgment is granted and denied in part. Evidentiary objections are
3    addressed only as required to resolve the summary judgment motions, and the Court defers the
4    requests for exclusion of experts for a later stage, as warranted.

## LEGAL STANDARD

6    The summary judgment motions are governed by familiar standards. "The party moving
7    for summary judgment always bears the initial burden of demonstrating the absence of a genuine
8    issue of material fact." *Schmid v. Cnty. of Sonoma*, No. 19-cv-00883-JD, 2021 WL 1118077, at
9    *2 (N.D. Cal. Mar. 24, 2021) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)), *aff'd*,
10   No. 21-15722, 2022 WL 1638198 (9th Cir. May 24, 2022). When the moving party bears the
11   burden of proof at trial, it must "come forward with evidence which would entitle it to a directed
12   verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden
13   Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quotation omitted). "When the moving party does
14   not bear the ultimate burden of proof, it can meet its initial burden on summary judgment by
15   'showing -- that is, pointing out to the district court -- that there is an absence of evidence to
16   support the nonmoving party's case.'" *Schmid*, 2021 WL 1118077, at *2 (internal quotation
17   marks omitted) (quoting *Celotex*, 477 U.S. at 325). "It is then the nonmoving party's burden to go
18   beyond the pleadings and identify specific facts that show a genuine issue for trial." *Abdul-Haqq
19   v. Permanente Med. Grp., Inc.*, No. 19-cv-03727-JD, 2022 WL 7127947, at *1 (N.D. Cal. Oct. 12,
20   2022) (citing *Celotex*, 477 U.S. at 323-24), *aff'd*, No. 22-16684, 2024 WL 1155449 (9th Cir. Mar.
21   18, 2024).

22   A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict
23   for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is
24   material if it could affect the outcome of the suit under the governing law. *Id.* at 248-49. To
25   determine whether there is a genuine dispute of material fact, a court must view the evidence in
26   the light most favorable to the non-moving party, drawing all justifiable inferences in its favor. *Id.*
27   at 255. "A scintilla of evidence or evidence that is merely colorable or not significantly probative
28   does not present a genuine issue of material fact." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130,

2

1134 (9th Cir. 2000). "It is not the Court's responsibility to root through the record to establish the absence of factual disputes, or to look for evidence on the nonmoving parties' behalf." *CZ Servs., Inc. v. Express Scripts Hldg. Co.*, No. 18-cv-04217-JD, 2020 WL 4368212, at *3 (N.D. Cal. July 30, 2020) (internal quotations and citations omitted).

## DISCUSSION

### I. PRODUCT LIABILITY CLAIMS

In the main, defendants contend that plaintiffs did not proffer enough evidence on causation to warrant a trial on the product liability claims for strict liability and negligence. Several defendants also say that they are immune from tort liability because they produced the products for U.S. Navy vessels at the direction of the federal government.

#### A. Governing Law

In an order on motions to dismiss, the Court concluded that federal maritime law governs the negligence claims under a straightforward application of the test articulated by the U.S. Supreme Court in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). *See* Dkt. No. 303. at 1. This so because plaintiffs allege that Speck was exposed to asbestos while performing maintenance on Naval vessels and on equipment destined for Naval vessels. *See id*. (citing cases); *see also McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1173 (9th Cir. 2016) (applying federal maritime law).

Even so, plaintiffs and most of the defendants briefed the product liability claims under California law, without consideration of federal maritime law.[1] *See* Dkt. No. 340-1 at 13; Dkt. No. 355 at 12; Dkt. No. 330-1 at 3; Dkt. No. 346-1 at 5. Why that happened is unclear, especially in light of the dismissal order. None of the parties have taken issue with the order, or said why California might apply instead. It appears that the briefs simply repeated legal arguments made in other asbestos cases where California law applied.

---

[1] RSSC took no position on choice of law and argued that summary judgment should be granted under either standard. Dkt. No. 335 at 5-7.

3

1    Consequently, for the sake of clarity, the Court reaffirms that federal maritime law governs
2    here. This is less of a problem than the parties' failure to address it would suggest because federal
3    maritime and California law do not sharply diverge in ways material to Speck's claims. Federal
4    maritime law is itself "an amalgam of traditional common-law rules," *E. River S.S. Corp. v.*
5    *Transamerica Delaval Inc.*, 476 U.S. 858, 865 (1986), and uses a substantial-factor standard very
6    similar to California law. *See McIndoe*, 817 F.3d at 1174 (plaintiff must prove "both that he was
7    actually exposed to asbestos-containing materials that were installed by the [defendants] and that
8    such exposure was a substantial contributing factor in causing his injuries"); *Rutherford v. Owens-*
9    *Illinois, Inc.*, 16 Cal. 4th 953, 982 (1997) (plaintiff must prove "*exposure* to the defendant's
10   defective asbestos-containing products" and "reasonable medical probability that a particular
11   exposure or series of exposures was a 'legal cause' of his injury, i.e., a *substantial factor* in
12   bringing about the injury") (emphasis in original).
13   In addition, federal maritime law holds that "[e]vidence of only minimal exposure to
14   asbestos is insufficient; there must be 'a high enough level of exposure that an inference that the
15   asbestos was a substantial factor in the injury is more than conjectural.'" *McIndoe*, 817 F.3d at
16   1176 (quoting *Lindstrom v. A-C Prod. Liab. Tr.*, 424 F.3d 488, 492 (6th Cir. 2005), *abrogated on*
17   *other grounds by Air & Liquid Sys. Corp. v. DeVries*, 139 S. Ct. 986 (2019)). The California
18   Supreme Court has stated in the same vein that "[t]he substantial factor standard is a relatively
19   broad one, requiring only that the contribution of the individual cause be more than negligible or
20   theoretical." *Rutherford*, 16 Cal. 4th at 978. Under both bodies of law, a defendant in asbestos
21   cases "may be held liable only for [a plaintiff's] exposure to asbestos-containing products that
22   were either manufactured or supplied by them." *Boyd v. Warren Pumps, LLC*, 654 F. App'x 875,
23   876 (9th Cir. 2016) (unpublished) (citing *O'Neil v. Crane Co.*, 53 Cal. 4th 335 (2012) and
24   *Lindstrom*, 424 F.3d at 492).
25   Our circuit has found little conflict between federal maritime law and state law in
26   circumstances akin to those in this case. *See Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856
27   (9th Cir. 2019) (no conflict between maritime law and Idaho law on asbestos tort causation).
28   California expressly derives its causation standard in asbestos cases from "traditional tort

4

principles" as described in the Restatement. *Rutherford*, 16 Cal. 4th at 968-69. Although there is some suggestion in the academic literature that *Rutherford* has been relaxed in practice by California's intermediate courts[2], the California Supreme Court expressly rejected an "alternative liability" approach that would relieve a plaintiff of his burden to establish causation as to each accused product. *See id*. at 971-73.

### B. Shipyard Defendants

The shipyard defendants -- General Dynamics and Bath Iron Works -- jointly moved for summary judgment on the negligence claims, which are the sole remaining claims against them. Dkt. Nos. 347 & 349.[3] Plaintiffs opposed. Dkt. Nos. 360 & 361.

#### i. General Dynamics

Summary judgment is granted in favor of General Dynamics. Plaintiffs did not meet their burden on causation. It is undisputed that General Dynamics built three submarines -- the USS Seawolf, USS Thomas Edison, and USS Flasher -- in Connecticut between 1953 and 1966, which Speck worked on in California in the 1970s and 1980s. *See* Dkt. No. 347 ¶¶ 5, 7. The problem for plaintiffs is that they have not identified evidence from which a jury could conclude that Speck was "actually exposed" to asbestos from equipment that General Dynamics placed on those ships. *McIndoe*, 817 F.3d at 1174-75.

Plaintiffs recite the qualifications and general conclusions of several experts but do not point to any actual evidence of exposure caused by General Dynamics. *See* Dkt. No. 360 at 8-13. They say that Speck worked on "originally installed electrical equipment" abord these ships, but do not cite any record evidence showing that to be true. The cited testimony, *see* Dkt. No. 360 at 5, is vague and speculative as to the nature and extent of work performed on these ships. The fact

---

[2] *See* Jason Litt et. al., *Returning to Rutherford: A Call to California Courts to Rejoin the Legal Mainstream and Require Causation Be Proved in Asbestos Cases Under Traditional Torts Principles*, 45 Sw. L. Rev. 989, 991 (2016).

[3] The Court directed the defendants to "make every effort to consolidate motions." Dkt. No. 250. Defendants did not demonstrate optimal compliance, but they did make some effort to streamline the proceedings by filing joint motions accompanied by supplemental briefs. Plaintiffs' requests to deny most of the motions on the theory that they breached the Court's order are denied.

1   that General Dynamics used asbestos in the mid-20th century for "high pressure applications,"
2   Dkt. No. 360 at 7, says nothing about whether any original pieces of equipment on the ships Speck
3   worked on in the 1970s contained asbestos at the time he worked on them.
4       Evidence of bystander exposure is also missing. Speck testified that he saw insulators
5   working on "a whole bunch of ships" over his career, Dkt. No. 347-2, Exh. E at 350:25-351:10,
6   but he could "[n]ot specifically" remember insulators working on the Sea Wolf, Thomas Edison,
7   or Flasher, *id*. at 350:25-351:23; 352:3-9. Nor did he recall any instances where the insulation on
8   a General Dynamics vessel was disturbed in his presence. *See* Dkt. No. 360-1, Exh. 1 at 666:4-15
9   (Q: "[D]o you have a specific recollection of recalling thermal insulation being disturbed aboard
10  the Thomas Edison?" A: "Not that I recall specifically."); *id*. at 667:11-20 (Q: "[D]o you recall
11  any instances where you observed thermal insulation being disturbed aboard [the Flasher]"? A:
12  "Other than often, you know, it often happened with leaks. I can't tie it down, no.").
13      Consequently, plaintiffs failed to create a triable issue of fact on the question of asbestos
14  exposure, and judgment is granted for General Dynamics on the sole remaining claim against it.

### ii. Bath Iron Works

16  Summary judgment is denied for Bath Iron Works (BIW). BIW acknowledges that the
17  original insulation on its 1940s Naval destroyers contained asbestos, and there is evidence that
18  Speck was exposed to original insulation on the USS Agerholm in the 1960s. Dkt. No. 349 ¶¶ 3-4.
19  Speck worked for three or four months on a major "overhaul" of the Agerholm. Dkt. No. 361-1,
20  Exh. 1 at 78:20-22, 678:8-14. He worked in the engine room where other trades removed
21  turbines, boilers, and insulation, which created a "snowstorm" of dust that he would "have to walk
22  through that in order to get to the equipment we were dealing with." *See id*. at 77:11-78:7; 285:4-
23  286:19. This dust was "mostly from the insulation," which Speck "assume[s]" was original to the
24  vessel because it had "seven layers of paint on it." *Id*. at 84:22; 82:15-21. That is enough for a
25  jury to decide the question of actual exposure. *See McIndoe*, 817 F.3d at 1176.
26      The same evidence also raises a triable question of whether the exposure was a substantial
27  contributing factor in causing Speck's injuries. For asbestos claims, "the substantial-factor test
28  requires 'demonstrating that the injured person had substantial exposure to the relevant asbestos

6

for a substantial period of time.'" *Stephens*, 935 F.3d at 855-56 (quoting *McIndoe*, 817 F.3d at 1176). To that end, plaintiffs presented evidence that Speck experienced "'a high enough level of exposure'" to asbestos dust during the months-long overhaul of the Agerholm "'that an inference that the asbestos was a substantial factor in the injury is more than conjectural.'" *McIndoe*, 817 F.3d at 1177 (quoting *Lindstrom*, 424 F.3d at 492).

Contrary to BIW's suggestion, expert testimony is not mandatory for proof of causation in asbestos cases. The Sixth Circuit has expressly determined that "expert testimony is not required" to prove causation under maritime law. *Lindstrom*, 424 F.3d at 498 (citation omitted). Our circuit has cited *Lindstrom* with approval. *See*, *e.g.*, *McIndoe*, 817 F.3d at 1176 & n.6; *Boyd*, 654 F. App'x at 876. *McIndoe* specifically highlighted that the plaintiffs' fact evidence did not show "substantial" levels of exposure to the relevant product independent of expert opinions. *See McIndoe*, 817 F.3d at 1177. Plaintiffs' evidence here is enough to go to a jury without overlapping expert testimony.

### C. Electrical Equipment Defendants

Eaton and Gould Electronics moved separately for summary judgment. Dkt. Nos. 339 & 330. Plaintiffs opposed. Dkt. Nos. 362 & 355. Only Gould moved on the product liability claims. *See* Dkt. No. 330.

#### i. Gould

Summary judgment is granted in favor of Gould on the strict liability and negligence claims. For actual exposure, Speck's testimony about work performed on motor controllers manufactured by ITE, owned by Gould, was vague. *See* Dkt. No. 355-1, Exh. 1 at 455:16-21 (Q: "Well, do you recall personally working on an ITE motor controller or do you just recall seeing that name, at some point?" A: "Yeah, I just -- you know, I was aware of all the things we talked about and everything and ITE was in that batch."). However, he did describe the process of inspecting, cleaning, and repairing motor controllers at MINSY, listed among the manufacturers who supplied motor controllers, and said that he performed "that work" on equipment supplied by all the manufacturers he identified. *See id.* at 36:23-38:1; 42:19-23; 455:5-21.

7

1	Even giving plaintiffs the benefit of the doubt about actual exposure, they did not proffer
2	enough substantial factor evidence to proceed against Gould.  A defense expert acknowledged that
3	a study found that cleaning asbestos-containing arc chutes in motor controllers could create
4	"significant occupational exposures" to asbestos.  Dkt. No. 355-1, Exh. 7 (Egeland Depo) at
5	116:9-16.  But Speck testified that the time he spent working on motor controllers "would depend
6	on the controller," Dkt. No. 355-1, Exh. 1 at 455:1-4, and he did not testify about the frequency or
7	duration of his work on ITE controllers.  *See McIndoe*, 817 F.3d at 1177.  Speck's testimony
8	establishes only that he performed some amount of cleaning and maintenance work on some
9	number of ITE controllers at some point in time; it does not establish that work performed on ITE
10	controllers caused asbestos exposures that were substantial enough to be a substantial factor in
11	causing his disease.

12	Speck's testimony also does not provide a factual foundation from which an expert could
13	so conclude.[4]  Plaintiffs' pulmonology expert, Dr. Barry Horn, acknowledged that he does not
14	know "how close in proximity Mr. Speck was to any work done on or around a General Electric
15	product or product of another defendant[,]" and has "no idea" about the quantity of asbestos fibers
16	to which Speck may have been exposed by any of the defendants' products.  Dkt. No. 344-1, Exh.
17	A at 74:10-14; 74:15-25.  Consequently, Dr. Horn cannot fill in the gaps on causation, as was true
18	in other asbestos cases where he testified.  *See*, *e.g.*, *Shiffer v. CBS Corp.*, 240 Cal. App. 4th 246,
19	253 (2015) (concluding that Dr. Horn lacked "an adequate basis to conclude … that [the
20	plaintiff's] exposure to Westinghouse-related asbestos was hazardous and a substantial cause of
21	his mesothelioma"); *see also Stephens*, 935 F.3d at 857-58 (expert's assumption of facts plaintiff
22	did not prove does not create triable issue).

23	Although the Court defers resolution of the Rule 702 motions, it is worth noting that Dr.
24	Horn's opinions are at odds with the substantial-factor inquiry as a whole.  Dr. Horn opines that
25	"[a]ll of [Speck's] asbestos exposure contributed to the development of asbestosis and pleural

---

[4] Although Gould's motion did not address whether plaintiffs' experts could show substantial-factor causation, plaintiffs briefed these arguments in their opposition, and Gould responded to them.  Dkt. Nos. 355 at 4-7; Dkt. No. 369 at 3.

8

1  plaques," and that "all of his exposures contributed to his risk for developing asbestosis and made
2  his disease worse." Dkt. No. 368-1, Exh. B at 38.  This is just the kind of causation opinion
3  testimony that was rejected in *McIndoe* because it would "render the substantial-factor test
4  essentially meaningless." *McIndoe*, 817 F.3d at 1177.  As in *McIndoe*, Dr. Horn "did not make
5  distinctions between the overall dose of asbestos [Speck] breathed aboard the ships" and in the
6  shipyard "and that portion of such exposure which could be attributed to [ITE's] materials."
7  *McIndoe*, 817 F.3d at 1177.  He also offered no qualitative analysis of the hazards of asbestos-
8  containing motor controllers generally, or ITE controllers specifically.  At his deposition, Dr. Horn
9  confirmed that he "didn't dwell on that as to the particular manufacturers of the electrical
10 equipment and what he worked on and what he didn't work on." Dkt. No. 344-1, Exh. A at 73:3-
11 11.  All of this calls plaintiffs' reliance on Dr. Horn into considerable doubt.

### D. Molding Compound Supplier Defendants

The molding compound supplier defendants -- PECW Holding Company f/k/a Plastics Engineering Company (Plenco) and Union Carbide Corporation (UCC) -- jointly moved for summary judgment.  Dkt. No. 340.  Plaintiffs opposed.  Dkt. No. 365.

#### i. Plenco

Summary judgment is granted in favor of Plenco.  Plaintiffs' only evidence for exposure is that (1) Plenco supplied many tons of asbestos-containing phenolic molding compound to manufacturers that are accused of supplying motor controllers to ships at MINSY, and that (2) Speck's description of the appearance of the arc chutes in the motor controllers he worked on at MINSY "is consistent with" Plenco's description of its own asbestos-containing molding compound material." Dkt. No. 365 at 6, 20.  *See* Dkt. No. 365-1, Exh. 5 (Plenco sales records).

This evidence does not raise a triable issue of actual exposure because it does not demonstrate, or allow a reasonable inference, that Plenco provided the products to which Speck was exposed.  There is no evidence that Plenco was the exclusive or even dominant supplier of molding compound to the accused motor controller manufacturers during the relevant time period, and the only evidence on this score establishes that Plenco was one of many such suppliers.  *See* Dkt. No. 340-4, Exh. K (Cutler-Hammer Depo.) at 145:6-10; Dkt. No. 340-4, Exh. S (Rockwell

9

Depo.) at 36:6-19; Dkt. No. 340-4, Exh. U (Plenco's expert declaration) at ¶ 14. Square D's corporate representative "wouldn't even know where to begin to start trying to name all of the molding materials or suppliers that made the molding materials" for its electrical products, and it "wouldn't surprise him at all" if there were "60 or more" from the 1960s through 1980s. Dkt. No. 340-4, Exh. L (Schneider Depo.) at 87:3-18; *id*. at 108:15-23. This evidence is uncontroverted, and plaintiffs did not address it in their opposition.

Nor is there evidence that the electrical equipment manufacturers that purchased molding compound from Plenco used it to make arc chutes for motor controllers -- let alone motor controllers on which Speck performed maintenance. Plenco's corporate representative was unaware of any customer using Plenco's asbestos-containing molding compound to manufacture arc chutes. Dkt. No. 340-4, Exh. I at 49:1-9. Although the jury would be entirely free to disbelieve him, his testimony underscores the fact that plaintiffs have not met their burden of placing Plenco-supplied asbestos inside motor controllers at MINSY.

There is also no evidence that Plenco's molding compound has a distinct appearance, such that Speck's description of the arc chutes he worked on could independently justify an inference that Plenco supplied the materials. Plenco's putative expert offered uncontroverted evidence that "there were numerous manufacturers of phenolic molding compounds in the marketplace" at the time Speck worked at MINSY, and that their materials are "impossible to distinguish visually." Dkt. No. 340, Exh. U at ¶ 14. Even the expert "could not distinguish molding compounds made by Union Carbide, Durez, Plenco, or others absent specific formulation information and sophisticated scientific equipment." *Id*. Representatives from Walter-Cutler and Square D confirmed that it is impossible identify the supplier of molding materials just by looking at an arc chute. *See* Dkt. No. 340-4, Exh. K (Walter-Cutler Depo.) at 147:24-148:18; Dkt. No. 340-4, Exh. L (Schneider Depo.) at 108:4-10. Plaintiffs do not address any of this evidence in their opposition.

On this record, no reasonable jury could not conclude that Speck worked on motor controllers manufactured with Plenco-supplied, asbestos-containing molding compound. Nor is there any evidence of the nature or frequency or duration of his work on such controllers that could support a finding of tort causation as to Plenco.

### ii. Union Carbide Corporation

Summary judgment is granted in favor of Union Carbide. Union Carbide sold a "phenolic molding compound" under the name "Bakelite" from 1939 to 1975. Dkt. No. 365-1, Exh. 11 at 1. Speck testified that he worked with "Bakelight" terminal strips as an apprentice in the 1960s (Dkt. No. 340-4, Exh. B at 68:18-69:14; Exh. E at 543:24-544:22; 545:13-23), but he admitted that he did not know who manufactured them (*id.* at 544:22-25), did not know whether the bakelite contained asbestos (*id.* at 548:1-7), and was using the term "bakelite" "generically" rather than as a brand identifier (*id.* at 546:17-23).[5]

Even if Speck's testimony were sufficient to establish that he worked with UCC-produced Bakelite, which is questionable, plaintiffs did not adduce evidence that the Bakelite contained asbestos. The federal regulation cited by the plaintiffs states that "most Bakelite *did not* contain asbestos," and that, "[a]t its peak, asbestos containing Bakelite comprised 40% of the Bakelite produced by Union Carbide." Dkt. No. 365-1, Exh. 12 (55 Fed. Reg. 5144, 5158 [Feb. 13, 1990]) (emphasis added). Plaintiffs also did not present evidence of the nature or frequency or duration of his work with asbestos-containing Bakelite controllers that could support a finding of tort causation as to UCC.

### E. Wire Defendants

Ericsson and RSCC Wire & Cable, which are two wire defendants, separately moved for summary judgment on the ground that plaintiffs failed to create a triable issue on exposure. *See* Dkt. Nos. 346 & 335. Plaintiffs opposed. Dkt. Nos. 358 & 356.

### i. Ericsson

Summary judgment is granted in favor of Ericsson. Speck testified that as an electrician's apprentice installing cable in the 1960s, he had to strip off "the first layer of insulation" for the cable, which "was kind of dusty." Dkt. No. 356-1, Exh. 2 at 73:8-18. And he remembered working with "Anaconda, General Cable and Rockbestos" cable. *Id.* at 74:22-24; 75:20-22. But

---

[5] The spelling variations of Bakelite are all in the originals.

1   plaintiffs do not point to any evidence that the Anaconda cable, which is owned by Ericsson,
2   contained asbestos.

3         For proof of exposure, plaintiffs rely entirely on the opinion of an asbestos expert, Charles Ay, "that a significant amount of the wiring that was used in conjunction with electrical equipment on ships and submarines worked on at Mare Island Naval Shipyard during the years in which Mr. Speck worked there was asbestos-containing cable and wire." Dkt. No. 356-1, Exh. 10 ¶ 85. Even assuming for present purposes that this testimony were admissible, it does not establish the content of Anaconda cable. Our circuit has deemed similar testimony by this expert to be "speculation," *McIndoe*, 817 F.3d at 1176[6], and the California Court of Appeal also concluded that like testimony by Ay was insufficient to establish that a defendant's product contained asbestos, *see Andrews v. Foster Wheeler LLC*, 138 Cal. App. 4th 96, 111 (2006).

      Ay says that "this" -- meaning all of the cable Speck described -- "is asbestos cable" because Speck "said that some of the cable appeared to have fuzzy or fibrous insulation." Dkt. No. 356-1, Exh. 10 ¶ 85. But there are no citations to the evidence for this, and the attached testimony from Speck does not establish that Anaconda cable had fibrous insulation. To be sure, Speck's attorney repeatedly asked Speck -- over defendants' objections -- whether any products he worked on had a "fibrous" appearance. Dkt. No. 358-1 at 56:12-18; 72:23-73:6. Only at one point in the transcript lodged with the Court, and not designated by plaintiffs, does Speck indicate that the ship cable was fibrous, and the testimony is not specific to Anaconda cable. He said: "The wires, the internal wires connected the various parts together. They would -- especially the ends would get kind of frayed and fibrous and -- ." *Id*. at 56:16-18. This vague testimony is insufficient to raise a triable issue on whether Anaconda's cable insulation contained asbestos, irrespective of whether an expert republishes it. *See Stephens*, 935 F.3d at 858.

      Speck recollected that the cable stripping process was "kind of dusty," Dkt. No. 356-1, Exh. 2 at 73:16-18, but there is no evidence that this dust was from asbestos fibers. *See Stephens*,

---

[6] The circuit held that the plaintiffs in that case raised a triable issue on exposure, but there, Ay's testimony was coupled with eyewitness evidence suggesting that the decedent was exposed to asbestos-containing insulation. *McIndoe*, 817 F.3d at 1176. Here, such evidence is missing.

1  935 F.3d at 857 ("While Stephens testified that his father's work clothes were dusty, that does not

2  establish the frequency with which he was exposed to *asbestos* dust."). There is again no evidence

3  of the nature or frequency or duration of his work with asbestos-containing Anaconda wire.

### ii. RSCC Wire & Cable

Summary judgment is granted in favor of RSCC Wire & Cable, which owns Rockbestos, for the same reasons. Speck recalled working with Rockbestos on the USS Andrew Jackson but could not describe its appearance with particularity. Dkt. No. 356-1, Exh. 2 at 508:4-10; 511:4-10. He said that the cable he worked with generally contained insulation, *id*. at 73:8-12, but he did not place asbestos inside that insulation. Plaintiffs point to a statement by Rockbestos that "some" of its "shipboard cable" contained asbestos between 1930 and 1979, Dkt. No. 356-1, Exh. 4 at 10-11, but that fact alone is insufficient to prove that the Rockbestos cable Speck worked with likely contained asbestos.

### F. Insulation Defendant

The sole insulation defendant, Metalclad, also asked for summary judgment on the strict liability and negligence claims. Dkt. No. 331. Plaintiffs opposed. Dkt. No. 364.

### i. Metalclad

Summary judgment is denied. Metalclad contends that plaintiffs cannot show a "threshold exposure" to asbestos on a submarine for which Metalclad supplied insulation. *See* Dkt. No. 331 at 11. Metalclad devoted a scant paragraph to this issue, and plaintiffs readily met their burden on actual exposure. Metalclad sold asbestos-containing insulation to MINSY "for use in the [nuclear] reactor components for the USS Drum, USS Guitarro, USS Hawkbill and USS Pintado." Dkt. No. 364-1, Exh. 4 at 21:25-22:9. Speck worked on the USS Guitarro as a nuclear inspector and was exposed to workers installing insulation "in the reactor areas." *See* Dkt. No. 364-1, Exh. 3 at 98:23-100-13; 103:22-105:17. He also inspected the USS Pintado and was exposed to thermal insulation there. *Id*. at 106:10-25. That is enough to create a triable issue on actual exposure.

Metalclad also asked for summary judgment on plaintiffs' failure to warn theory of strict liability and negligence, on the ground that government specifications precluded Metalclad from affixing any warning label on the products that it sold to MINSY. Metalclad says that applicable

military specifications "required" only certain information to be included on product packaging, Dkt. No. 331 at 17, but that is a far cry from *prohibiting* warning labels. In fact, Metalclad concedes that the actual manufacturer of the asbestos-containing insulation at issue began affixing warning labels in late 1968. Dkt. No. 331 at 10.

## II.   GOVERNMENT CONTRACTOR DEFENSE

Because the Court denied summary judgment to BIW and Metalclad on the product liability claims, it will resolve their assertion of the government contractor defense to liability. The question of whether this affirmative defense can bar tort claims brought under federal maritime law is currently on appeal in our circuit. *See Roberto Elorreaga, et al v. ViacomCBS Inc.*, No. 23-16041 (appeal docketed July 24, 2023). Even so, the question here may be decided because neither BIW nor Metalclad have established the factual prerequisites of the defense.

"[L]iability for design defects in military equipment cannot be imposed on military contractors, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *In re Hawaii Fed. Asbestos Cases*, 960 F.2d 806, 810 (9th Cir. 1992) (quoting *Boyle v. United Technologies Corp.*, 487 U.S. 500, 512 (1988)).

Metalclad has not established these elements, on which it bears the ultimate burden of proof. The record indicates that Metalclad was required to provide insulation "in accordance with military specifications MIL-I-24244(Ships) … and MIL-I-2781," and that its Unibestos was an approved product. *See* Dkt. No. 331-2, Exh. 4 at ECF p. 128; Exh. 5; & Exh. 6, at ECF pp. 182-185. But the mere fact that Unibestos was approved and purchased for military use does mean that it was "military equipment" for which Metalclad may claim immunity. *In re Hawaii*, 960 F.2d at 810. "Where the goods ordered by the military are those readily available, in substantially similar form, to commercial users, the military contractor defense does not apply." *Id*. at 811. Here, evidence indicates that the Metalclad insulation sold to the Navy for MINSY was substantially the same as the insulation it sold commercially to non-military buyers. *See* Dkt. No. 354-1, Exh. 4 at 45:9-48:15. Metalclad suggests that certain elements of the MINSY Unibestos were bespoke, but

14

its representative testified that use of asbestos was *not* required to meet the Navy's "additional corrosion, mercury, chloride and fluoride requirements." Dkt. No. 364-1, Exh. 4 at 42:1-43:2.

So too for BIW. BIW relies on the opinion of an expert on Naval contracts, Christopher Hershel, that "all purchases of goods or services made by the U.S. Navy are under some form of contract," and that strict military specifications would have applied to BIW's submarines. Dkt. No. 348-1, Exh. 2 at 42-43. This is the defense-side equivalent of opining that all exposure to asbestos causes disease. It is far too general and untethered to the record to foreclose a trial. BIW has not furnished its contract with the U.S. Navy or otherwise demonstrated that the use of asbestos was required to meet military specifications for insulation on its vessels, including the USS Agerholm.

### III. FRAUD CLAIMS

#### A. Eaton

Summary judgment is granted in favor of Eaton, which owns Cutler-Hammer, on plaintiffs' claims for fraud and conspiracy to commit fraud. Dkt. No. 339. Plaintiffs concede that that summary judgment is appropriate on the conspiracy claim, but oppose it for the fraud claim. Dkt. No. 362 at 1 n.1. Plaintiffs also acknowledge that to prove fraud on their nondisclosure theory, they must establish "'some sort of transaction between the parties'" that gives rise to a duty to disclose. Dkt. No. 362 at 17 (quoting *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 227 (1997)).[7] But plaintiffs' discovery responses did not disclose any transaction or relationship between Eaton and Speck, and Speck does not remember having any contact with anyone at Eaton. *See* Dkt. No. 339-4 at 48-70 (response to Interrogatory No. 3); 339-8 (Speck Depo.) at 370:6-10. Nor does plaintiffs' opposition identify any evidence on this score. Plaintiffs simply insist that Eaton did "not adequately warn" Speck about the dangers of asbestos. Dkt. No. 362 at 17. Consequently, a fraud claim cannot go forward against Eaton.

---

[7] California law applies here because plaintiffs sued in California and no party invoked the law of another forum. *See Keller v. Chegg, Inc.*, No. 22-cv-06986-JD, 2023 WL 5279649, at *3 n.3 (N.D. Cal. Aug. 15, 2023).

15

### B. Ericsson

Summary judgment is granted in favor of Ericsson. Plaintiffs again concede that judgment should be entered for Ericsson on the conspiracy claim, but oppose summary judgment on the standalone fraud claim. *See* Dkt. No. 358 at 22 n.2. Because they failed to meet their burden of demonstrating that Speck was exposed to an asbestos-containing product for which Ericsson is responsible, they cannot establish injury from any alleged fraud by Ericsson.

## IV. PUNITIVE DAMAGES

### A. Eaton

Eaton's rather perfunctory request for summary judgment on punitive damages is denied. Dkt. No. 339 at 11-12. The suggestion that plaintiffs were required to identify a specific corporate officer responsible for the company's reprehensible conduct is not well taken. Plaintiffs may seek punitive damages from corporations in product liability cases, subject to federal constitutional limitations. *See*, *e.g.*, *Bankhead v. ArvinMeritor, Inc.*, 205 Cal. App. 4th 68, 86 (2012).

Eaton did not respond to this point, and instead argued for the first time in reply that all of plaintiffs' evidence for the punitive damages claim post-dates Speck's work with Eaton's products. Dkt. No. 380 at 5-6. This is a day late and dollar short. The Court will not take up an argument asserted for the first time on reply that should have been raised in an opening brief. *In re Capacitors Antitrust Litig.*, No. 14-cv-03264-JD, 2017 WL 897340, at *1 (N.D. Cal. Mar. 7, 2017).

## CONCLUSION

Because this order covers quite a bit of ground, the salient outcomes are summarized:

General Dynamics Corporation's motion for summary judgment is granted, and that defendant is dismissed.

Bath Iron Works Corporation's motion for summary judgment is denied.

Eaton Corporation's motion for partial summary judgment is granted.

Gould Electronics, Inc.'s motion for summary judgment is granted, and that defendant is dismissed.

1   PECW Holding Company f/k/a Plastics Engineering Company (Plenco)'s motion for
2 summary judgment is granted, and that defendant is dismissed.
3   Union Carbide Corporation's motion for summary judgment is granted, and that defendant
4 is dismissed.
5   Ericsson Inc.'s motion for summary judgment is granted, and that defendant is dismissed.
6   RSCC Wire & Cable's motion for summary judgment is granted, and that defendant is
7 dismissed.
8   Metalclad Insulation LLC's motion for summary judgment is denied.
9   Judgment will be entered separately in favor of General Dynamics, Gould, Plenco, Union
10 Carbide, Ericsson, and RSCC Wire & Cable.
11   **IT IS SO ORDERED.**
12 Dated:

JAMES DONATO
United States District Judge